UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | Case No. 1:22-cr-00132 (TNM) |
| ANTHIME GIONET, | : | |
| | : | |
| *Defendant.* | : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
MOTION FOR EARLY TERMINATION OF PROBATION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to Defendant Anthime Gionet's Motion for Early Termination of Probation, ECF No. 82. Gionet seeks early termination based on the decision in *United States v. Little*, 78 F.4th 453 (D.C. Cir. 2023), holding that a defendant convicted of a single petty offense may not be sentenced both to imprisonment and to probation for that offense. *Id.* at 454. Gionet, like Little, received a split sentence of imprisonment and probation. Having already served the imprisonment component of his sentence, Gionet seeks to terminate the remaining probationary period. But early termination is not the appropriate remedy for an illegal sentence (i.e., one in excess of the statutorily authorized term). Indeed, as reflected in the D.C. Circuit's decision in *Little*, the proper remedy is to vacate the illegal sentence so that the defendant may be resentenced to a lawful term. *Id.* at 461 ("So we vacate Little's sentence and remand to the district court for resentencing."). If Gionet's illegal split sentence were properly challenged, the Court at resentencing should impose a term of incarceration or probation that is within the statutory limit, recalibrating the punishment scheme to reflect the statutory sentencing factors in 18 U.S.C. § 3553(a) and giving credit for time served under the illegal sentence originally imposed.

On January 6, 2021, while members of Congress gathered in the United States Capitol to certify the results of the 2020 presidential election, Gionet, also known as "Baked Alaska," joined a large mob of rioters, who overwhelmed police officers and breached the Capitol building. Specifically, Gionet (1) entered the Capitol twice and remained inside over an hour; (2) conducted a 27-minute long livestream video while in the Capitol showing the chaos there and attempted to profit from the video; (3) went into two Senate offices and filmed himself in one Senator's office using an office phone to pretend to call the Senate, urging that "[w]e need to get our boy, Donald J. Trump into office" and in the other office proclaiming, "[o]ccupy the Capitol, let's go, we ain't leaving this bitch," and "Patriots are in control"; (4) invited other rioters to enter the Capitol through a broken window; (5) yelled at a United States Capitol Police (USCP) Officer who tried to get Gionet to leave the Capitol, saying, "You're a fucking oathbreaker, you piece of shit, fuck you, fuck you, fuck you, you piece of shit, you broke your oath to the Constitution, fuck you"; and (6) was convicted of assault, disorderly conduct, and criminal trespass for a 2020 incident, and criminal damage in a separate 2020 incident.

Gionet pleaded guilty to an Information charging him with illegally parading, demonstrating, or picketing in a Capitol Building, in violation of Title 40 U.S.C. § 5104(e)(2)(g) on January 6, 2021, the date that Congress was set to certify the vote count of the Electoral College of the 2020 Presidential Election. The Court sentenced Gionet to a "split sentence"—a term of imprisonment and a term of probation—under Title 18 U.S.C. § 3561(a)(3): 60 days' incarceration followed by 24 months' probation, a $2,000 fine, $500 in restitution, and a $10 special assessment. See January 10, 2023, Minute Entry and the Court's Judgment. ECF No. 75. He has served his 60-day prison term, which ended on March 31, 2023. He now asks this Court to terminate his 24-month term of probation, having served less than half of that term. The Court should deny this

motion both because terminating the probation portion of an illegal split sentence is not the proper avenue for remedying the illegality of that sentence and because Gionet has not presented any other grounds warranting termination.

I.     **Factual Background**

On November 15, 2022, the Government filed in this Court a comprehensive Sentencing Memorandum which included multiple video and social media exhibits that detailed Gionet's participation in the Capitol Riot, ECF 69. The Government incorporates by reference its Sentencing Memorandum, and the arguments made at the Sentencing Hearing in this case, which took place on January 10, 2023. Without rehashing the entire factual background from the Government's Sentencing Memorandum, some points of Gionet's conduct warrant continued emphasis below.

The day before the riot, on January 5, 2021, Gionet traveled to Washington, D.C., from his home in Queen Creek, Arizona.  That night, Gionet went to various places in D.C., including outside of the Black Lives Matter Plaza, and livestreamed individuals chanting against the police, Antifa, and Black Lives Matters. ECF 69, 6. There, Gionet yelled repeatedly at the D.C. Metropolitan police, "Fuck the cops." He also livestreamed other individuals who lodged other obscenities at the police. *Id*. Gionet's actions on January 5, 2021, were a prelude to his actions on January 6th at the Capitol.

On January 6th, Gionet livestreamed as he walked to the U.S. Capitol. Along the way, he heard that people were storming the Capitol and that Trump supporters were being pepper sprayed. Gionet went to the east front of the Capitol but did not find anyone engaged with the police there. He asked others who were there where the rioting was taking place, and once he found out, Gionet yelled to those around him "calling all Patriots, other side, we need backup . . . ." Gionet said that

he would "get as many people as I can." Gionet told others who were on the east front, "Hey Patriots, we need your help. Come to the other side of the Capitol. Let's go. The police are pepper spraying people." *Id*.

Gionet reached the Capitol, breached the building twice and remained inside over an hour. He illegally entered the Capitol the second time after a Capitol police officer ushered him out of the building, at which time, Gionet directed an obscene hand gesture at the officer and yelled at him, "You're a fucking oathbreaker, you piece of shit, fuck you, fuck you, fuck you, you piece of shit, you broke your oath to the Constitution, fuck you." ECF No. 69, 19-20.  As if leading rioters to the Capitol while he was outside was not enough, once inside, Gionet encouraged other rioters to enter the Capitol through a broken window and implored those already in the Capitol not to leave.  ECF No. 69, 12, 15.

While in the Capitol, Gionet entered two Senate offices and filmed himself in one Senator's office using an office phone to pretend to call the Senate, urging that "[w]e need to get our boy, Donald J. Trump into office" and in the other office proclaiming, "[o]ccupy the Capitol, let's go, we ain't leaving this bitch," and "Patriots are in control"; ECF No. 69, 18-19.

Gionet eventually left the Capitol building at approximately 3:40 p.m., having first entered it at approximately 2:35 p.m. He was one of the last rioters to exit the Senate Wing.  He admitted that he knew at the time he entered the U.S. Capitol Building that he did not have permission to do so. ECF 69, 25.

Gionet live-streamed his illegal activity to over 16,000 viewers. He also tried to profit from his live-stream, garnering approximately $2,000 from his illegal activity in the Capitol.  ECF No. 69, 8, 26, 29.

4

## II.      **<u>Procedural Background</u>**

On January 7, 2021, the United States charged Gionet by criminal complaint with violating 18 U.S.C. § 1752(a)(1) and 40 U.S.C. § 5104 (e)(2), and law enforcement officers arrested him in Houston, Texas, shortly thereafter. On April 19, 2022, the United States charged Gionet by Information with violating 40 U.S.C. § 5104(e)(2)(G), and he pleaded guilty to that charge on July 22, 2022, pursuant to a plea agreement.

For his conviction on a single count of violating 40 U.S.C. § 5104(e)(2)(G), Gionet faced a maximum of six months of imprisonment and a fine of up to $5,000, as well as $500 in restitution under the terms of his plea agreement.

On January 10, 2023, this Court sentenced Gionet to 60 days' incarceration followed by 24 months' probation, a $2,000 fine, $500 in restitution, and a $10 special assessment. See January 10, 2023, Minute Entry and the Court's Judgment, ECF No. 75. Gionet has served his 60-day prison term, which ended on March 31, 2023.

On December 28, 2023, Gionet filed a Motion for Termination of Probation (ECF No. 82) pursuant to Title 18 U.S.C. § 3564(c), based on the decision in *United States v. Little*, 78 F.4th 453 (D.C. Cir. 2023), which held that a defendant convicted of a single petty offense may not be sentenced both to imprisonment and to probation for that offense. *Id*. at 454. On January 17, 2024, this Court denied the government's request to hold Gionet's motion in abeyance pending the D.C. Circuit's decision in *United States v. Caplinger*, Case No. 22-3057, and ordered the Government to respond.

The Probation Department also opposes early termination of Gionet's supervision, and has represented that it would not consider release before he completes half of his probationary term, which would occur on March 31, 2024.

5

### III. Resentencing Is The Appropriate Remedy For An Unlawful Split Sentence Of Incarceration And Probation

After considering the statutory sentencing factors in 18 U.S.C. § 3553(a), this Court sentenced Gionet to a split sentence, providing an interdependent mix of incarceration and supervision appropriate to Gionet's offense and circumstances.

But *Little* invalidated this split sentence regime, unraveling the Court's intentionally tailored sentencing scheme. Gionet does not ask this Court to correct his illegal sentence, seeking instead to end it early pursuant to 18 U.S.C. § 3564(c). But where a court has imposed an illegal sentence, the remedy is not to automatically terminate that sentence, thereby nullifying the court's carefully crafted punishment. Rather, the remedy for an unlawful sentence is to vacate the sentence in its entirety and impose a lawful sentence. *See Little*, 78 F.4th at 461 ("So we vacate Little's [split] sentence and remand to the district court for resentencing."); *see also Davenport v. United States*, 353 F.2d 882, 883-84 (D.C. Cir. 1965) ("The appropriate remedy in this situation would appear to be to vacate appellant's [illegal] sentence and remand his case to the District Court for resentencing. . . ."); *Hayes v. United States*, 249 F.2d 516, 517 (D.C. Cir. 1957) (upholding resentencing by district court, noting that "if the sentence were invalid and defendant successfully attacked it, he could be validly resentenced though the resentence increased the punishment").

In the government's view there are three possible options available to the Court on resentencing, presented in no particular order: *first*, the Court may impose a term of probation or incarceration equal to the amount of time already served on probation or incarceration; *second*, the Court may impose a term of probation longer than the time already served on probation with credit for time already served on probation and additional credit for time spent incarcerated; and *third*, the Court may impose a term of incarceration longer than the previously served term of incarceration, with credit for incarceration time already served and additional credit for time spent

6

on probation.

The D.C. Circuit's decision in *Little* shows that resentencing is the proper path for addressing an unlawful split sentence. Little had already served his term of imprisonment when he submitted his brief to the D.C. Circuit and, for this reason, he argued that "the proper remedy [for his split sentence] is to reverse and remand with instructions that [he] be immediately discharged from probation and that an amended judgment be issued reflecting no probationary term." Br. for Appellant, *United States v. Little*, No. 22-3018 (July 28, 2022) at 40. The Court did not find merit in this position because it did not end Little's probationary term despite finding his split sentence to be unlawful. Instead, the Court "vacate[d] Little's sentence and remand[ed] to the district court for resentencing." *Little*, 78 F.4th at 461.[1]

Resentencing after the imposition of an unlawful sentence is especially appropriate where, as here and as in *Little*, the district court imposed a split sentence of incarceration and probation for the commission of a single offense. This Court crafted a sentence comprised of two components—a term of incarceration and a term of probation—to best address the statutory sentencing factors of 18 U.S.C. § 3553(a). Both components of the sentence were integral parts of a unified package the Court constructed to fulfill its statutory responsibility to "impose a sentence sufficient, but not greater than necessary, to comply with the purpose of [the sentencing statute]." 18 U.S.C. § 3553(a). The components of Gionet's sentence were inextricably intertwined, and simply vacating the term of probation without any further consideration—as Gionet now requests—would undo the sentencing scheme carefully crafted by this Court.

---

[1] As noted in the government's motion to hold in abeyance, whether resentencing rather than early termination of probation is the proper remedy for split sentences invalidated by *United States v. Little*, 78 F.4th 453, 454 (D.C. Cir. 2023), is presently before the Circuit Court in *United States v. Caplinger*, Case No. 22-3057 (Doc. No. 2032794, filed Dec. 21, 2023).

Analogy to resentencing under the sentencing package doctrine underscores the need for resentencing here. "The sentencing package doctrine recognizes that when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan, and that if some counts are vacated, the judge should be free to review the efficacy of what remains in light of the original plan." *United States v. Townshend*, 178 F.3d 558, 567 (D.C. Cir. 1999) (internal quotation marks omitted). In other words, where multiple counts of conviction are "properly viewed as a package," the "sentences [are], in essence, one unified term of imprisonment." *Id*. at 570 (internal quotation marks omitted). And "successful attack by a defendant on some but not all counts of conviction" may necessitate "vacat[ing] the entire sentence on all counts so that, on remand, the trial court can reconfigure the sentencing plan to ensure that it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a)." *Greenlaw v. United States*, 554 U.S. 237, 253 (2008).

The logic underlying resentencing in the sentencing package context applies equally in the split sentence context. Like Little, Gionet was only convicted of a single count, and the sentence this Court imposed can only be attributed to that offense. The two components of Gionet's sentence must be "properly viewed as a package" tailored to the statutory sentencing factors as they relate to Gionet's single count of conviction. *Townshend*, 178 F.3d at 570. And since the decision in *Little* unraveled the "overall plan" this Court crafted here, *id.* at 567, the Court should be given the opportunity, to "reconfigure the sentencing plan to ensure it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a)," *Greenlaw*, 554 U.S. at 253.

The connection between the two components of Gionet's split sentence is further evidenced by the short term of incarceration originally imposed. The Court imposed a period of incarceration

8

of 60 days, which is well below the statutory maximum sentence of six months, knowing that a significant period of supervision in the form of probation would follow. The sentence was fashioned holistically, and the probationary term was a companion to, and arguably an offset for, the lenient term of imprisonment. Now that the D.C. Circuit's decision in *Little* has invalidated the carefully balanced sentence originally imposed, the Court can address the interplay between these components and determine at resentencing how the initial sentence should be adjusted to bring it into conformity with what is legally authorized and to ensure that it achieves the intended punitive effect. This does not necessarily mean Gionet would face a longer term of incarceration or the imposition of a new term of probation if resentenced. Gionet is entitled to credit for the portion of his sentence already served, and upon review of the 18 U.S.C. § 3553(a) sentencing factors, the government anticipates that the Court may decide that a new sentence equivalent to time served is appropriate.

Rather than seek resentencing, Gionet has dressed up his challenge to the legality of his split sentence as a motion for early termination of probation, seeking to eliminate one component of the holistic sentence this Court imposed for his conduct on January 6. The Court should deny this motion as the wrong procedural vehicle to challenge his illegal sentence. The proper mechanism for challenging an illegal sentence is through a direct appeal or a challenge pursuant to 28 U.S.C. § 2255, not a motion for early termination of probation.[2]

## IV. Resentencing Would Not Violate Double Jeopardy

Resentencing Gionet (should he file the appropriate motion) would not violate double jeopardy so long as he receives credit for time already served. *See United States v. Little*, No. 21-

---

[2] In the interests of justice, the government would waive any applicable procedural barriers to the relief sought herein based on the *Little* decision, such as appellate or collateral review waivers, procedural defaults, or statutes of limitations.

CR-315-RCL, 2024 WL 181260, at *6 (D.D.C. Jan. 17, 2024) ("the Court may impose an additional punishment on Little so long as it appropriately credits the time Little served in prison and on probation against the punishment"); *United States v. Martin*, 363 F.3d 25, 37-38 (1st Cir. 2004) (unlawful term of probation must be credited against any subsequent sentence of incarceration); *United States v. Lominac*, 144 F.3d 308, 318 (4th Cir. 1998) (unlawful term of supervised release must be credited against any subsequent sentence of incarceration).[3]

So long as credit is given for time already served, the Double Jeopardy Clause does not bar the imposition of an increased punishment at resentencing where a defendant does not have a legitimate expectation of finality in the sentence originally imposed. *See United States v. Fogel*, 829 F.2d 77, 87 (D.C. Cir. 1987) ("If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited by the double jeopardy clause. If, however, there is some circumstance which undermines the legitimacy of that expectation, then a court may permissibly increase the sentence."); *see also United States v. DiFrancesco*, 449 U.S. 117, 137 (1980) ("the Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase").

The district court in *Little* recently held on remand from the D.C. Circuit that Little lacked a legitimate expectation of finality and could be resentenced to additional punishment for two independent reasons—both of which apply to Gionet. First, defendants like Little and Gionet cannot "have a legitimate expectation that [their] sentence is final because it was illegal." *Little*,

---

[3] Because probation is a less restrictive penalty than incarceration, crediting time served on probation against a future term of incarceration, or crediting time incarcerated against a future term of probation, should not be "a day-to-day offset." *Martin*, 363 F.3d at 39. While the precise crediting ratio in this case is for the district court to consider, the specific ratio should derive from a "fact-based inquiry" that looks to "the specific conditions of [defendant's] probation and the effect of [any crediting] on the underlying purposes of the [sentencing statute] as set out in 18 U.S.C. 3553(a)." *Id.*

10

No. 21-CR-315-RCL, 2024 WL 181260, at *5; *see also Fogel*, 829 F.2d at 88 (finding that one reason the defendant had a legitimate expectation of finality was because "an increase in appellant's term of probation was not necessary to bring the sentence into compliance with any statute" as "[t]he originally imposed sentence was not impermissible under the penalty statute"); *United States v. Rourke*, 984 F.2d 1063, 1066 (10th Cir. 1992) ("A defendant cannot acquire a legitimate expectation of finality in a sentence which is illegal, because such a sentence remains subject to modification.").

Second, a defendant who attacks an unlawful sentence—by appealing or otherwise challenging the sentence—can have no legitimate expectation of finality in the sentence originally imposed. *See Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *5 (no legitimate expectation of finality where, "as in this case, the defendant voluntarily placed his sentence at issue by challenging it") (cleaned up); *see also Fogel*, 829 F.2d at 88 (finding that one reason the defendant had a legitimate expectation of finality was because "the increase in the original sentence [was] also not predicated on any action taken by the [defendant]"); *United States v. Andersson*, 813 F.2d 1450, 1461 (9th Cir. 1987) ("Andersson has no legitimate expectation of finality in the original sentence when he has placed those sentences in issue by direct appeal and has not completed serving a valid sentence."). Unlike Little, Gionet did not challenge his sentence on direct appeal. Nevertheless, Gionet seeks to terminate the probationary term by directly challenging the legality of his sentence. *Cf. Townshend*, 178 F.3d at 567 n.1 (finding no violation of double jeopardy and distinguishing cases that did "not involve situations in which a defendant has voluntarily placed his sentence at issue by challenging it via § 2255").[4]

---

[4] Gionet's challenge to the legality of his sentence through the improper avenue of a motion for early termination of probation is nothing more than an attempt to have his cake and eat it too. Gionet should not be allowed to challenge the legality of his sentence through improper means and

The fact that Gionet already began serving his split sentence—and even that he already completed the term of imprisonment originally imposed—does not change this calculus. On remand from the D.C. Circuit, Little made similar arguments to Gionet's, seeking to simply end the probationary component of his sentence without facing resentencing. And he argued that any punishment beyond the prison term he already had served violated double jeopardy. But as the *Little* district court and many other courts have recognized, a more severe punishment can be imposed at resentencing even after service of the original unlawful sentence has begun. *See, e.g.*, *Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *5 ("An increased punishment is permissible even if the defendant has begun serving the original, illegal sentence, although any punishment already incurred must be credited against the increased punishment."); *Hayes*, 249 F.2d at 517-18 ("a sentence which does not conform with the applicable statute [because it is below the statutory minimum] may be corrected though defendant . . . has begun to serve it"); *Lominac*, 144 F.3d at 317-18 (remanding to district court for resentencing after vacating supervised release component of split sentence, noting that term of incarceration could be adjusted upwards even after defendant completed originally imposed term of incarceration), *abrogated on other grounds by Johnson v. United States*, 529 U.S. 694 (2000); *United States v. Versaglio*, 85 F.3d 943, 949 (2d Cir. 1996) (remanding to district court to consider imposition of increased fine after invalidating incarceration component of split sentence even after defendant already paid originally imposed fine in full); *United States v. Holmes*, 822 F.2d 481, 498 (5th Cir. 1987) ("Correction of a sentence can occur even if service of the sentence has begun, even if the correct sentence may be more onerous to the

---

then claim that he maintains a legitimate expectation of finality in his illegal split sentence precisely because he did not raise his challenge through the proper means. Regardless, as discussed above, Gionet can have no legitimate expectation of finality in his split sentence because it is illegal.

defendant than the original.") (citation omitted); *Christopher v. United States*, 415 A.2d 803 (D.C. 1980) (affirming sentencing court's sua sponte correction of illegal split sentence by eliminating probation component and imposing term of incarceration greater than that originally imposed where defendant had already begun serving sentence).

A line of Supreme Court cases—starting with *Ex parte Lange*, 85 U.S. 163 (1873), and including *In re Bradley*, 318 U.S. 50 (1943), relied on by Gionet in his motion (at 3-4)—does not hold otherwise. *Lange* and *Bradley* involved defendants sentenced to a fine and imprisonment under statutes that permitted the imposition of either a fine or imprisonment. In *Lange*, the Supreme Court held that the defendant was entitled to immediate release because he had already paid the statutory maximum fine in full, stating that resentencing him to the alternate punishment of imprisonment would "punish[] [him] twice for the same thing." 85 U.S. at 175. Similarly, in *Bradley*, the Supreme Court held that the defendant "[wa]s entitled to be freed of further restraint" because he had already paid the fine in full. 318 U.S. at 52. The full payments of the fines in *Lange* and *Bradley* meant that those defendants had already fully satisfied one of two authorized alternative penalties such that no additional punishment could be imposed because anything more would exceed the punishment that was statutorily authorized. In other words, these cases stand for the unassailable but narrow proposition that "a defendant may not receive a greater sentence than the legislature has authorized." *United States v. DiFrancesco*, 449 U.S. 117, 139 (1980).

Multiple courts, including the Supreme Court, have recognized the limited application of *Lange* and *Bradley*. *See, e.g., Jones v. Thomas*, 491 U.S. 376, 383 (1989 ("Lange therefore stands for the uncontested proposition that the Double Jeopardy Clause prohibits punishment in excess of that authorized by the legislature, and not for the broader rule suggested by its dictum.") (citation omitted); *id.* at 386 ("we do not think the law compels application of Bradley beyond its facts");

13

*see also Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *4 ("Little's [double jeopardy] argument fails, however, because the case law does not support such a stark, sweeping reading of *Lange* or *Bradley*."). Indeed, *Lange* and *Bradley* are a narrow exception to the general rule that allows for resentencing after a defendant successfully challenges an unlawful sentence, even if service of the sentence has already begun and even if the corrected sentence is more onerous than the original. For example, the Fifth Circuit has recognized that the *Lange*/*Bradley* limitation applies only where one of the alternative penalties imposes the maximum authorized sentence and is satisfied in full:

> The *Bradley* cases stand apart from this general rule, however. The contempt statute authorizes only a fine or imprisonment, and the full payment of a fine satisfies one lawful alternative sentence. Sentences involving imprisonment not yet fully served or a term of imprisonment below the maximum authorized by an offense statute are not analogous, nor are cases in which a defendant appeals a dual sentence before satisfying either prong. What differentiates the *Bradley*-type case from these other cases is that a *Bradley* defendant who has paid his fine has suffered the maximum sentence authorized by the statutes.

*Holmes*, 822 F.2d at 498-99; *see also id.* at 499 n.30 (listing cases not controlled by *Bradley* because, among other things, they involved "resentencing . . . after sentences that were below the maximum authorized by offense statutes, or after a defendant appealed the entirety of his sentence or challenged a sentence but had not fully satisfied a sentence as great as the law allows").

Courts have recognized other limitations to the *Lange*/*Bradley* rule that are relevant here. For example, in *Lominac*, the Fourth Circuit held that "*Bradley* does not bar resentencing" where two components of an unlawful split sentence are of the type that can be credited against each other. 114 F.3d at 318. The defendant in *Lominac* was originally sentenced to both imprisonment and supervised release even though the applicable statute only authorized the imposition of incarceration in the defendant's particular circumstances. *Id.* at 317-18. And by the time the Fourth Circuit heard the appeal, the defendant had already served the entire term of incarceration and

some portion of the term of supervised release imposed under the unlawful split sentence. *Id.* at 317. Nevertheless, the Fourth Circuit found that remanding to the district court for resentencing was appropriate because, "[h]ad the court recognized that it lacked authority to impose the . . . term of supervised release, it might have validly concluded that a prison term of longer than six months was appropriate." *Id.* The Fourth Circuit distinguished *Bradley*, noting that while the "'alternative sentences in *Bradley*'" of imprisonment and a fine "'were of a different type' and it simply was not 'possible to credit a fine against time in prison,'" "it is possible to credit [defendant's] time served on supervised release against any time to be served in prison." *Id.* at 318 (quoting *Thomas*, 491 U.S. at 384). In other words, "[u]nlike the monetary sanction of a fine, which cannot be converted into an equivalent temporal sanction, [defendant's] term of supervised release restrained his liberty for a known period of time that can be credited against any future sentence of imprisonment." *Id.*

Similarly, in *Versaglio*, the Second Circuit held that *Lange*/*Bradley* does not prohibit resentencing a defendant to an increased fine on remand where the district court had originally imposed an unlawful split sentence of a fine and imprisonment and where the defendant had already paid the full amount of the originally imposed fine. 85 F.3d at 948. The Second Circuit vacated the term of imprisonment because the fine had already been paid and noted that "[n]o issue was raised in either *Lange* or *Bradley* as to a sentencing court's power to revise the *amount* of a fine in light of the unavailability of imprisonment." *Id.* (emphasis in original). Thus, recognizing that the two components of the original split sentence were intertwined, the Second Circuit remanded the case to the district court to "consider[] whether to make an upward adjustment in the amount of the fine" in order to maintain "the aggregate punitive effect of [the original] sentence." *Id.* at 949.

15

Here, *Lange*/*Bradley* provides no bar to resentencing Gionet to a longer term of incarceration, or alternatively to a term of probation, for at least two distinct reasons. First, unlike *Lange* and *Bradley*, the alternative sentences here do not involve penalties that are impossible to credit against each other. Rather, as described above, any time previously served in prison and any time previously served on probation should be credited against any future sentence of imprisonment or probation imposed at resentencing. *See Lominac*, 114 F.3d at 318; *Martin*, 363 F.3d at 37-38; *Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *6.

Second, the term of incarceration that Gionet completed was well below the statutory maximum of six months, and resentencing him to a longer term of incarceration or alternatively to a term of probation (taking account of any time already served) would not exceed the maximum punishment authorized by statute. Indeed, the district court intentionally crafted a dual sentencing scheme suited to Gionet's specific offense and circumstances in which each component weighed against the other and played an integral part in the overall plan. "Had the court recognized that it lacked authority to impose the [split sentence], it might have validly concluded that a prison term of longer than [35 days] [or that a standalone probationary term] was appropriate." *Lominac*, 144 F.3d at 317. Thus, the district court "should have the option of considering whether to make an upward adjustment in the" term of imprisonment or whether to impose a standalone term of probation at resentencing. *Versaglio*, 85 F.3d at 948.[5]

---

[5] *But see United States v. Pryer*, No. 21-CR-667-RCL-ZMF, 2024 WL 179914 (D.D.C. Jan. 17, 2024) (recommending that probationary term of split sentence be terminated where defendant already completed term of incarceration). In *Pryer*, another case in which a defendant moved for early termination of the probationary term of a split sentence in light of *Little*, Magistrate Judge Faruqui issued a Report and Recommendation to Judge Lamberth, finding that resentencing would violate double jeopardy and recommending termination of probation. Magistrate Judge Faruqui rejected arguments similar to those made here by the government, finding that "*Lange* and *Bradley* dictate the outcome." *Id.* at *2. Respectfully, the government intends to object to this Report and Recommendation, and submits that, as recognized by Judge Lamberth in *Little*, "double jeopardy

## V.     Gionet Has Not Met The Standard For Early Termination Of Probation.

The Court may grant a motion for early termination of probation if, "after considering the factors set forth in section 3553(a)," "it is satisfied that [early termination] is warranted by the conduct of the defendant and the interest of justice." 18 U.S.C. § 3564(c). Because Gionet's reliance on *Little* is misplaced, his remaining arguments do not meet this standard.

First, Gionet argues (at 2-4) that the "interests of justice militate in favor of immediate termination of his probation" because his split sentence is illegal under *Little*. Not so. As explained above, the proper avenue for addressing the illegality of a split sentence of incarceration and probation is resentencing—not simply ending one component of an unlawful sentencing package. The interest of justice is not served by circumventing the proper remedy to an illegal split sentence. This is especially true where, as here, the Court carefully crafted a split sentence with two components—a term of incarceration, followed by a term of probation—to address the specific circumstances of a defendant's offense and satisfy its statutory responsibility to "impose a sentence sufficient, but not greater than necessary, to comply with the purpose of [the sentencing statute]." 18 U.S.C. § 3553(a). Granting Gionet's requested relief would allow him to escape the full penalty for his crime after having served one component of an illegal sentence that alone is "[in]sufficient . . . to comply with the purpose of [the sentencing statute]." *Id.*

Second, Gionet argues (at 4) that the Court should terminate his probation because after *Little*, no defendant will serve both incarceration and probation. That is true. But the D.C. Circuit already has remanded several cases where the defendants have appealed their split sentences and ordering resentencing. *See Little*, 78 F.4th at 461 (remanding case for resentencing); *United States*

---

principles do not prevent the Court from imposing additional punishment, so long as the Court credits the punishment already served by [Gionet] against any further penalty." No. 21-CR-315-RCL, 2024 WL 181260, at *2.

*v. Hendrix*, Case No. 22-3103, 2023 WL 8857827, at *1 (D.C. Cir. Dec. 20, 2023) (same); *United States v. Mazzio*, Case No. 22-3079, Document #2034844 (D.C. Cir. Jan. 8, 2024) (same). And in the *Little* case itself, Judge Lamberth recently denied a motion for early termination of probation in favor of resentencing as the D.C. Circuit Court ordered. *See Little*, No. 21-CR-315-RCL, 2024 WL 181260. So Gionet's claims of disparate treatment ring hollow.

Third, Gionet argues (at 4-5) that his compliance with the terms of his probation warrant early termination. But mere compliance with the conditions of supervision does not warrant early termination. *See e.g.*, *United States v. Wesley*, 311 F. Supp. 3d 77, 81–82 (D.D.C. 2018) ("even perfect compliance with conditions of release does not qualify as 'exceptionally good behavior' warranting early termination").

Moreover, consideration of the Section 3553(a) factors confirms that probation should not be terminated early. Gionet showed no respect for the law on January 6th when he berated law enforcement and encouraged others to join him in his illegal actions. Gionet illegally breached the Capitol following two prior arrests in 2020, which led to convictions of assault, disorderly conduct, and criminal trespass for one incident and another conviction for criminal damage for a separate 2020 incident. ECF No. 69, 29 - 30. Even with criminal charges pending from his 2020 conduct, Gionet breached the Capitol twice on January 6th, even after law enforcement told him to leave, suggesting that he will engage in more illegal conduct if motivated to do so and underscoring the need for the Court to continue to supervise Gionet on probation.

### VI.     Conclusion

For the reasons set forth above, the government respectfully requests that the Court deny Gionet's motion for early termination of probation and, upon the filing of an appropriate motion pursuant to 28 U.S.C. § 2255, resentence him to a period of probation equivalent to the time already

18

served.

                        Respectfully submitted,

                        MATTHEW M. GRAVES
                        UNITED STATES ATTORNEY
                        D.C. Bar Number 481052

By:   /s/ Anthony L. Franks
       ANTHONY L. FRANKS
       Assistant United States Attorney
       Bar No. 50217MO
       555 Fourth Street, N.W.
       Washington, DC  20530
       anthony.franks@usdoj.gov
       (314) 539-3995